**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | |
|---|---|
| ROBERT G. GALLAGHER pka BOBBY FREEMAN, an individual resident of the State of Nevada, BETTY FRANKLIN, an individual resident Nevada,<br><br>  Plaintiffs,<br><br>vs.<br><br>CRYSTAL BAY CASINO, LLC, a Nevada Limited Liability Company, ROGER WILLIAM NORMAN, an individual resident of the State of Nevada, VENTRCEK ADVERTISING DESIGN, INC., a Nevada Corporation<br><br>  Defendants. | 3:08-cv-00055-ECR-VPC<br><br><br><br><br><br>**Order** |

   Plaintiffs brought suit alleging copyright infringement, misappropriation, and breach of contract.  Now pending is a motion for sanctions (#72) filed by Defendants, requesting dismissal for spoliation of critical evidence.  The motion is ripe, and we now rule on it.

**I. Background**

   Plaintiff Robert G. Gallagher ("Gallagher") is a singer, songwriter, comedian, and promoter.  (Second Am. Compl. ¶ 1 (#39).) Plaintiff Betty Franklin ("Franklin") is Gallagher's manager.  (Id. ¶ 2.)  Defendant Crystal Bay Casino, LLC ("Crystal Bay") is a

1  limited liability company organized and doing business in Nevada.
2  (Id. ¶ 3.)  Crystal Bay operates the Crystal Bay Casino on the north
3  shore of Lake Tahoe.  (Id.)  Defendant Roger W. Norman ("Norman") is
4  the sole managing member of Crystal Bay.  (Id. ¶ 4.)  Defendant
5  Ventrcek Advertising Design, Inc. ("Ventrcek") is an advertising
6  agency.  (Id. ¶ 5.)
7       In 2003, Gallagher and Franklin created a song ("the Song"),
8  including words and music, intended to advertise and promote Crystal
9  Bay's casino business. (Second Am. Compl. ¶ 8 (#39).)  Gallagher
10 created a sound recording on a CD of himself performing the Song.
11 (Id. at 8.)  Plaintiffs contend that they created the Song as part
12 of an agreement with Defendants Norman and Crystal Bay.  (Id. ¶ 11.)
13 Plaintiffs contend that the agreement required Defendants to pay a
14 flat fee of $50,000 for use of the song.  (Id.)  Defendants deny the
15 existence of an agreement.  (Mot. for Summary Judgment at 4 (#66).)
16      Plaintiffs contend that the Song was presented both live and on
17 cassette or CD to Norman and his wife ("the Normans") in 2003, but
18 recordings were not given to the Normans until 2005, in the form of
19 two CDs ("the original CDs").  (P's Opp. at 2 (#75).)  Plaintiffs
20 claim that they made exact duplicates ("the duplicate CDs") of the
21 original CDs, down to the writing on the face of the CDs, at the
22 time the original CDs were made.  (Stip. and Order to Extend
23 Discovery Deadlines for Limited Purpose ¶3 (#65).)  Defendants
24 contend that Norman received a single CD containing a performance of
25 the Song in 2003.  (Mot. for Sanctions at 4 (#72)).  None of the
26 Defendants paid Plaintiffs for use of the song.  (Second Am. Compl.
27 ¶ 18 (#39).)
28

1    In 2007, Plaintiffs were informed by acquaintances familiar
2 with Gallagher's voice and style that the Song was playing on
3 Crystal Bay Casino's website.  (P's Opp. at 4 (#69).)  Ventrcek
4 created and maintained the content for the website.  (Id.)
5    On or about September 26, 2007, Plaintiffs applied for
6 copyright protection for both the musical composition of the Song
7 and the sound recording of Gallagher's performance of the Song.
8 (Second Am. Compl. ¶ 10 (#39).)  The Copyright Office issued its
9 Certificate of Registration for the Song on November 5, 2007,
10 assigning registration number PAu3-144-873 to the Song.  (Id.)
11    On January 26, 2008, Gallagher brought suit claiming copyright
12 infringement, misappropriation, breach of contract, and breach of
13 the implied covenant of good faith and fair dealing. (Compl. at ¶¶
14 22, 26, 32, 36 (#1).)  On February 12, 2009, Gallagher and Franklin
15 filed a second amended complaint alleging copyright infringement,
16 misappropriation, and breach of contract. (Second Am. Compl. at ¶¶
17 21, 25, 31 (#39).)
18    During discovery, Plaintiffs submitted photocopies of the
19 covers of the duplicate CDs, which are alleged to be identical in
20 content, creation date, and cover writing to the original CDs given
21 to the Normans.  (P's Resp. to First Set of Requests for Production
22 of Documents at 22-23 (#66-3).)  The photocopies of the covers of
23 the duplicate CDs have phrases such as "Copyright 2003" and "Do not
24 Duplicate" written on the CDs.  (D's Exhibit 5, at 22-23 (#66-3).)
25 Plaintiffs claim they gave two original CDs to Norman in 2005;
26 Defendants claim that Norman received only one CD in 2003.  (P's
27 Opp. at 2 (#75).)  Both parties agree that the duplicate CDs are
28

3

important evidence in the case, and should be examined by forensic experts.  (Stip. and Order to Extend Discovery Deadlines for Limited Purpose ¶5 (#65).)  Defendants' CD was found to have been manufactured in 2003, although the date when the Song data was burned onto the CD could not be determined.  (D's Exhibit 7, Expert Report at 9 (#72-1).)  Plaintiffs' duplicate CDs, however, were never turned over to the Defendants despite multiple requests.  (Mot. for Sanctions at 6 (#72).)  After representing that Plaintiffs' counsel was in possession of the duplicate CDs, and after submitting photocopies of the covers of the duplicate CDs, Plaintiffs finally admitted that they are now unable to locate the duplicate CDs.  (Id. at 6.)  Plaintiffs do not offer any further explanation in their opposition for their inability to produce the duplicate CDs from which the photocopies submitted during discovery were made.

    On July 26, 2010, we granted in part and denied in part Defendants' motion for summary judgment (#66).  (Order (#71).)  Specifically, we denied the motion for summary judgment (#66) with respect to Plaintiffs' claims for copyright infringement and misappropriation.  We granted the motion with respect to Plaintiffs' claim for breach of contract on the basis of insufficient evidence of an agreement.  We instructed Defendants to bring the spoliation of evidence claim included in the motion for summary judgment as a separate motion.  Defendants complied with our Order, and on August 24, 2010, filed the pending motion for sanctions (#72).  Plaintiffs opposed (#75), and Defendants replied (#76).

4

## II. Spoliation Sanctions Standard

A party has a duty to preserve evidence when it knows or has reason to know that the evidence is "potentially relevant" to litigation. United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002). A party's failure to preserve potentially relevant evidence is actionable only if it prejudices the opposing party. Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 371 (9th Cir. 1992).

A district court "has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993.) This power includes the power to sanction the responsible party by excluding spoiled evidence, by admitting evidence of the circumstances of the destruction or spoliation, or by instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party. Id. Dismissal is also available as a sanction when there is evidence of bad faith. Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006).

Determining whether the sanction of dismissal is appropriate for spoliation of evidence requires a court to consider the public's interest in expeditious resolution of litigation, the court's need to manage its docket, the risk of prejudice to the party seeking sanctions, the public policy favoring disposition of cases on their merits, and the availability of less drastic sanctions. Anheuser-

5

Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995).

### III. Analysis

A. Plaintiffs' Failure to Preserve Evidence Prejudiced Defendants

The relevance of the duplicate CDs is not in dispute. Nor can Plaintiffs claim that they were unaware of the relevance of the duplicate CDs. Plaintiffs included photocopies of the duplicate CDs during discovery, claiming that the writing on the duplicate CDs specifying that the contents were copyrighted 2003, and instructing "Do not duplicate," is identical to the writing on the original CDs given to Defendants in 2003 or 2005.

In addition to proffering photocopies of the covers of the duplicate CDs, Plaintiffs repeatedly claimed that the duplicate CDs were in possession of Plaintiffs' counsel. Plaintiffs' inability to produce the duplicate CDs now suggests some measure of responsibility for the loss. The fact that the spoliation here may be negligent rather than intentional does not excuse Plaintiffs. See Bass-Davis v. Davis, 134 P.3d 103, 111 (Nev. 2006).

If the duplicate CDs had not been misplaced, Defendants would have been able to conduct forensic analysis in order to determine when the duplicate CDs were manufactured or when the data was burned onto the duplicate CDs. The loss of the duplicate CDs prevents Defendants from being able to prove, or disprove, through expert analysis, that the duplicate CDs were made when Plaintiffs claim they were made.

6

Therefore, we conclude that sanctions to mitigate Defendants' prejudice resulting from the loss of the duplicate CDs may be appropriate.

B. Dismissal is Not Warranted

Defendants have requested dismissal. In order to grant a motion to dismiss for spoliation, we must find that Plaintiffs acted with willfulness, fault, or bad faith, and examine additional factors such as the public policy favoring disposition of cases on their merits. Leon, 464 F.3d at 958. Less severe alternatives may sufficiently address the harm resulting from the loss of the evidence, and should be considered before a court dismisses an action on the grounds of spoliation. Id.

In this case, while the public's interest in expeditious resolution of litigation and the court's need to manage its docket weigh in favor of dismissal, the risk of prejudice is not great enough to overcome the public policy favoring disposition of cases on their merits. Defendants have not shown that loss of the duplicate CDs will prevent them from defending against Plaintiff's accusations. Defendants will still be able to testify as to their version of the events in 2003 or 2005, and are in possession of a CD that they claim to be the original given to Defendants in 2003.

Nonetheless, Defendants' deprivation of an opportunity to examine the duplicate CDs may be the basis for less drastic sanctions than the one requested here. Adverse inference instructions, or other measures such as barring introduction of the photocopies of the covers of the duplicate CDs, or barring testimony

1 regarding the writing allegedly found on the original CDs, may be
2 appropriate.  Defendants may file a motion seeking such relief.

### IV. Conclusion

Plaintiffs offer no explanation for their loss of relevant evidence after representations that the evidence was in Plaintiffs' counsel's possession.  Defendants' inability to examine the duplicate CDs prejudices their defense, and thus, sanctions may be appropriate.  Dismissal, however, is not warranted under these circumstances.  Less severe alternatives to dismissal, such as adverse inference instructions, may adequately address Defendants' prejudice.  Defendants may file a motion seeking such relief.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' motion for sanctions (#72) is **DENIED** without prejudice.  Defendants shall have twenty one (21) days to file a motion seeking other forms of relief to address any prejudice resulting from the loss of the duplicate CDs.  Plaintiffs shall have fourteen (14) days to respond, and Defendants shall have seven (7) days in which to file a reply in support of their motion.

DATED: November 8, 2010.

_____
UNITED STATES DISTRICT JUDGE